IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERRY MUNGRO, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Civil Action No.: JFM-02-545 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| GIANT FOOD, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## OPINION

Plaintiff Jerry Mungro, a former tractor-trailer driver for Giant Food, Inc., has filed suit

against Giant,[1] alleging racial discrimination and harassment in violation of Title VII of the Civil

Rights Act of 1964 and 42 U.S.C. § 1981, and adding state law claims. Defendants now move

for summary judgment as to all counts. The motion will be granted.

I.

Mungro began working as a tractor-trailer driver for Giant in March of 1989. In August

1993, Mungro was disciplined for allegedly violating a company communications policy.

---

[1] Mungro has also asserted claims against several of Giant's employees. Those defendants are entitled to summary judgment for the reasons stated in the accompanying opinion in Carson v. Giant Food, Inc., JFM-96-2882. That opinion also addresses Mungro's hostile environment claims under Title VII and section 1981 and state law claims against Giant, in addition to global arguments made by Mungro and other Plaintiffs concerning the viability of applying the continuing violation doctrine. Thus, this opinion focuses only on Mungro's discriminatory discharge claims under Title VII and section 1981.

1

Fourteen months later, in November 1994, he was fired for allegedly violating the same policy again. Mungro, who is African-American, alleges that his firing was discriminatory and that he was subjected to racial harassment in the workplace. He filed claims on January 30, 1995, with the Prince George's County Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). When neither found Giant had violated Mungro's rights, he commenced this suit.

The first incident which led to Mungro's eventual dismissal occurred on August 25, 1993. After making a delivery to a Giant supermarket, Mungro took a permitted 15-minute break and then called his wife from the store. According to Giant, Mungro had a lengthy conversation, and, as a result, was more than an hour late in reporting his whereabouts to the company's transportation department in violation of company policy. (Def.'s Mem. at 6.) Giant further alleges that Mungro then falsified a "trip card," the document on which drivers record their work activity, in an attempt to conceal his extended break. (Id.)

Mungro's account of the August 1993 incident differs from Giant's. He contends that he was delayed at the store because the trailer he was supposed to pick up was not ready, and that he made erasures and changes on his time card only to ensure its accuracy. (Pl.'s Opp'n at 3.) However, Mungro does acknowledge that after he took his 15-minute break on this occasion, he spent another 15 to 20 minutes on the telephone with his wife. (Mungro Dep. at 60.) After the incident, Mungro was allowed to retain his job under a Conditional Return to Duty Agreement, informally known as a "last chance letter," which he signed. (Def.'s Mem. at 7.) The agreement subjected him to immediate discharge if he were to violate the agreement or engage in any further misconduct. (Id. at 7 n.1.)

2

Giant alleges that Mungro again violated company policy governing communication between drivers and the Giant transportation office in November 1994, thereby also violating his last chance letter. On November 4, 1994, Mungro arrived at a Giant store but was unable to unload his tractor-trailer because another truck was parked at the store's receiving dock. (Id. at 7-8.) Instead of immediately communicating his delay, as company policy requires, Giant alleges that Mungro began cleaning out his trailer, not calling dispatchers until about one hour later.[2] (Id. at 8.) After this incident, Mungro went on vacation. Upon his return to work, he was fired. (Id. at 8 n.3)

Mungro also denies Giant's account of the second incident. He contends that when he encountered a delay at the store, he parked his truck and went inside to find a manager, a process that he estimates took no more than five minutes. (Pl.'s Opp'n at 2.) He states that he promptly notified Giant dispatchers about the delay. (Mungro Dep. at 94.) He argues that no violation occurred, or that if he did commit a "technical violation," it was of a type commonly countenanced by Giant. (Pl.'s Opp'n at 2.) Mungro alleges that he was fired for racially discriminatory reasons, and that white drivers who similarly worked under last chance letters and then committed subsequent violations were not fired.

II.

Plaintiff has raised a claim of discriminatory discharge under Title VII and 42 U.S.C. § 1981. Those claims are discussed in turn below.

---

[2] It is a violation of Giant policy for a tractor-trailer driver to fail to immediately report a delay of 15 minutes or more. (Def.'s Mem. at 8 n.2.)

3

A.

To establish a prima facie case under Title VII, Plaintiff must offer direct evidence of discriminatory intent on the part of the Defendant or meet a three-part test for inference of discriminatory intent under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). Plaintiff asserts that he has offered direct evidence of discriminatory intent, because Chris Balodemas, the head of Giant's Transportation Department, allegedly said in response to a comment by Mungro about forgetting to contact dispatchers when he was delayed: "I see you didn't forget to put on your gold chains when you got dressed this morning."[3] (Pl.'s Opp'n at 4.) As an initial matter, it is not clear that a single, isolated statement [4] could provide the requisite direct evidence of intent. <u>Cf., e.g.</u>, <u>Escobar v. Montgomery County Board of Education</u>, 2001 WL 98600, at * 6 (D. Md. 2001) (rejecting, in Title VI discrimination case, a "[s]tray remark[]" as providing adequate direct evidence of discriminatory intent). However, even if it could, the single statement here is not direct evidence that Plaintiff was terminated from his job because of his race as opposed to his violations of company policy. Rather, the statement requires an inference that race played a role in the firing. Such an inference necessarily implicates the

---

[3] In his deposition, Mungro recounts the statement in several slightly different forms, including, "You don't forget to put your gold chains around your neck or your rings on your finger . . ." and "[Y]ou don't forget to put your jewelry on, your diamond ring on and your gold chains around your neck." (Mungro Dep. at 75, 154.) According to Mungro, the comment was made during a 1993 meeting. (<u>Id.</u> at 75.)

[4] Mungro also alleges that Balodemas made comments about his appearance and jewelry on other occasions, but his recounting of these comments is vague. For example, Mungro says Balodemas would say to him, "Look at you, why are you dressed like that?" (Mungro Dep. at 76.) Although he says he found these comments degrading, Mungro declined to categorize Balodemas' comments as racial slurs. (<u>Id.</u> at 148.)

4

McDonnell Douglas burden-shifting scheme. See, e.g., Settle v. Baltimore County, 34

F.Supp.2d 969, 985 (D. Md. 1999) ("[I]n the absence of direct or circumstantial evidence of

discriminatory intent, careful analysis of claims of disparate treatment in accordance with the

well settled McDonnell Douglas paradigm is absolutely required.").

Under the three-part McDonnell Douglas scheme, a plaintiff alleging discriminatory

discharge must first establish a prima facie case of discriminatory discharge. See Hawkins v.

Pepsico, Inc., 203 F.3d 274, 278 (4th Cir. 2000). If he does so, the burden of production then

shifts to the defendant to offer a "legitimate, nondiscriminatory reason" for the plaintiff's

discharge. Id. (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311

(1996)). If defendant satisfies this burden, the burden of production shifts back to the plaintiff to

demonstrate that defendant's "proffered reason was mere pretext and that race was the real

reason" for the discharge. Id.

Plaintiff has failed to carry his burden both as to the prima facie case and pretext. A

prima facie case of discriminatory discharge consists of the following elements:

> (1) [Plaintiff] is a member of a protected class;
> (2) [Plaintiff] was qualified for [his] job and [his] job performance was
> satisfactory;
> (3) [Plaintiff] was fired; and
> (4) [O]ther employees who are not members of the protected class were
> retained under apparently similar circumstances.

Porter v. National Con-Serv, Inc., 51 F.Supp.2d 656, 659 (D. Md. 1998), aff'd 173 F.3d 425 (4th

Cir. 1999) (quoting Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995)). There is no

question Plaintiff is a member of a protected class, see Carter v. Ball, 33 F.3d 450, 459 (4th Cir.

1994), nor that he was fired.

Plaintiff has failed to demonstrate, however, that his job performance was satisfactory. Plaintiff's own belief that his performance was satisfactory, without more and in the face of Defendant's assertions that he twice violated company policy, is not enough to meet Plaintiff's burden.  What matters is not the employee's "self-perception" regarding the quality of his job performance, but "'the perception of the decision-maker. . . .'"  Farasat v. Paulikas, 32 F.Supp.2d 249, 255 (D. Md. 1998), aff'd 166 F.3d 1208 (4th Cir. 1998) (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)).  This is true regardless of the wisdom of the policy in question, or the wisdom of strict adherence to it, neither of which are within the court's purview to question. The court does not sit as a "'super-personnel department'" and thus cannot "decide whether the reason [for the termination] was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."  DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997)).  A plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance.  See, e.g., Blair v. Colonnas Shipyard, Inc., 52 F.Supp.2d 687, 694 (E.D. Va. 1999), aff'd 203 F.3d 819 (4th Cir. 2000) (finding that an employee who violated policies his employer considered "very important" did not perform his job satisfactorily and therefore did not establish a prima facie case of race discrimination); Farasat, 32 F.Supp.2d at 254-55 (rejecting discriminatory termination claim of plaintiff who was repeatedly tardy, despite receiving written warnings, and who violated company policy).

Furthermore, Plaintiff has failed to establish a prima facie case of discriminatory discharge because he has not demonstrated that other employees who are not members of the protected class were retained despite apparently similar circumstances.  Although he mentions

three white tractor-trailer drivers whom he believes were working under last chance letters, committed subsequent violations, and were not fired, he has produced no admissible evidence supporting these allegations. Instead, Plaintiff states only that it was a "known fact" that the three had been treated differently than he had. (Mungro Dep. at 165.) Conclusory and hearsay evidence does not provide support sufficient to defeat a summary judgment motion. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). Additionally, Plaintiff has failed to demonstrate that the three were similarly situated to him. See Porter, 51 F.Supp.2d at 659. Giant has asserted, and is not contradicted by the Plaintiff, that it does not and has not issued any tractor-trailer driver of any race a second "last chance letter" for violating the same policy that resulted in the first letter, unless the driver had 25 years or more of service with Giant, an exception for which Mungro was not eligible. (Def.'s Mem. at 15, n.6.)

Even if Plaintiff could establish a prima facie case of discriminatory discharge, Defendant has offered a legitimate, non-discriminatory reason for the discharge that Plaintiff has not subsequently shown to be a mere pretext for race discrimination. Giant explains that it adheres to a "strict" communications policy for drivers because of the importance of "maintaining the timely and efficient delivery of food and merchandise" to its supermarkets. (Id. at 5.) It has offered evidence that it legitimately believed Plaintiff had twice violated its communications policy, a terminable offense. The provision by Defendant of this legitimate, non-discriminatory reason for Plaintiff's discharge shifts the burden of production back to Plaintiff to prove pretext – a burden which Plaintiff fails to meet.

Plaintiff fails to prove both that Defendant's proffered reason for discharging him was false, and that the real reason he was fired was discrimination, both of which are required to

7

establish pretext. See DeJarnette, 133 F.3d at 298. In fact, he has offered no more than his disagreement with Giant's decision to fire him and his subjective belief that Giant's decision was motivated by discrimination. This is not adequate to survive summary judgment. See Hawkins, 203 F.3d at 279; Farasat, 32 F.Supp.2d at 256. Plaintiff's Title VII claim for discriminatory discharge thus fails as a matter of law, and Defendant's motion as to this count will be granted.

B.

Giant next argues that it is entitled to summary judgment on Plaintiff's § 1981 claim. The same elements of a prima facie case are required for § 1981 as for Title VII. See Gairola v. Virginia, 753 F.2d 1281, 1285 (4th Cir. 1985). Because I have found no discrimination under Title VII, Plaintiff's § 1981 claim fails as a matter of law. See Causey, 162 F.3d at 804. Defendant's motion as to Plaintiff's § 1981 claim will be granted.

A separate order is attached.

Date: Feby 29, 2002

J. Frederick Motz
United States District Judge

8